Good morning, Your Honors. May it please the Court, Robert Gregory appearing on behalf of plaintiff appellants Robert and Betty Gant. I'd like to reserve three minutes for rebuttal. Plaintiffs have appealed because, for all intents and purposes, there were two cases that were tried in October 2006. First, there was the trial in which plaintiffs presented evidence about the merits of the case, and that was Robert Gant took two examinations for promotion in his position with the Pinal County Sheriff's Office, both tests of which he passed and for both tests which he was denied promotion. However, there was a second trial that was held at the same time, in effect, in which the defendants persisted at trial from their opening arguments through trial testimony and their closing arguments, characterizing Mr. Gant as a liar, as a stupid man who possessed less than the writing abilities of an 11-year-old, and as an officer who was acting in dereliction of his duties by being AWOL. Aren't all of these arguments that you're now attempting to make precluded because their objections weren't properly made at the trial level? Either one of the trials? No, Your Honor, for at least two reasons. One, initially plaintiffs did not object on the grounds that we felt compelled to defend Mr. Gant's character, which was being impugned. However, after the court had given instruction in sidebar, outside the presence of the jury, that those issues of Mr. Gant being AWOL, a liar, polygraph information as not being admissible, not being credible, and then defendants to raise that later in the case in violation of the court's instruction, at that point we felt that objection by us, especially during closing argument, would have only added to the strength of defendants' improper argument, put us in the position of having to ---- Not if the court rules in your favor on the objection and instructs the jury not to consider and also admonishes the attorney on the other side for violating the court's earlier ruling. It's a quandary for plaintiffs. If plaintiffs had known in retrospect that the defendants were going to stake their case on impugning Mr. Gant's character at the trial instead of focusing on the merits of the case, then we would have prepared pretrial. Well, it's not exactly a novel tactic. I mean, you've got to expect, you've got to expect if you put yourself out there that there's going to be an attack on it. And the district judge, at least as I read it, I don't understand exactly what he did. So it's certainly not clear to me that he ever made an order with respect to the AWOL exhibits or with respect to the polygraph evidence. And when there was no objection made when that stuff came into evidence, never mind it, closing argument, I don't know. I'm having a hard time seeing how one can complain about it at this point. Well, having been there at the time when the judge, Judge Carroll, made instructions regarding the evidence or the ---- Well, he made musings about it. I mean, he was concerned. And, you know, unfortunately, when one muses from the bench, it's just that. I mean, it's not a ruling. A ruling is a ruling. You know, you can do this or you have to do that. It's not, geez, I'm concerned and I'm troubled and I'm bothered and I think maybe there's a problem with this stuff. That's not a ruling, is it? Well, understanding the context in which these conversations happened is Judge Carroll interrupted the trial at several points and excused the jury and asked counsel to come in and discuss these issues. And plaintiffs felt, and I felt that it was well understood at the time when he said that this evidence was not credible and was false evidence. Well, but just because an evidence isn't credible doesn't mean it's excludable, nor did he exclude it. I think he was, he believed that the AWOL comment was a little exaggerated given the fact that Gant had actually called in and called out. So he wasn't really AWOL? Well, let's examine that situation, if we may, for just a moment. The basis for the defendant's characterization of Mr. Gant as AWOL was that he failed to answer any dispatch calls on Thanksgiving Day, 2001. However, defendants submitted two exhibits at trial that clearly showed that no dispatch calls were made to him on that day. Okay. So you've got a good jury argument. I mean, they're exaggerating. He didn't get any calls. So he wasn't AWOL, right? No, he was not. However. But I mean, what's why is that, why does that somehow go to per se inadmissibility so much as it goes to the weight of the evidence and to a jury argument on your part? Well, I think Judge Carroll's questioning of defense on that issue was right on point in which he said, what's the good faith basis for you pursuing that line of questioning if you know, because they're your exhibits, that no dispatch calls were made? How can you characterize Mr. Gant as being AWOL when you know he wasn't? Well, there wasn't a motion to strike and he didn't strike it. The evidence is in there. I mean, where does it get you now? That's what I'm focusing on. It may have been a bum deal or it may have been whatever, but what can we do about it? Well, we believe that at a minimum it was misleading evidence that confused the jury and at a minimum invites a remand for a new trial at this point. That's just one example of false evidence or misleading evidence that was presented at trial. And we took Judge Carroll at his word. But Judge Carroll didn't think so and he was on the scene and he, why did he abuse his discretion in denying your post-trial motions? If he thought as strongly as you say now he thought, why didn't he just say, you know what, I'm going to grant a new trial because I'm more than bothered by it. I think it was contrary to the weight of the evidence, the verdict was. I'm not in a position to speculate as to what Judge Carroll concluded a year after we filed our motion for judgment as a matter of law, and that's how long it took before it was ultimately ruled on. I do know that at the hearing on our motion he discussed that if he felt that if this matter were to go up on appeal that it raised serious issues about the false evidence and the misleading evidence and evidence that was submitted to the jury after he felt that he had made a clear instruction not to do so. And so perhaps you're correct, Your Honor, there was not a specific motion to strike or a specific order in which Judge Carroll said, I order you not to do this. But taking a judge at his honor, I think that it was appropriate at the point that Judge Carroll instructed the parties, this is false, this is not credible, for the parties to comply with that and not to twist that. Kennedy. How long was your motion for a new trial pending before you finally got around to bringing up this so-called new evidence? It was 18 months. What was going on during that 18 months? We were — well, first of all, we were waiting for Judge Carroll to rule on the motion for judgment as a matter of law. It was post-trial that the sheriff's office director of personnel remembered and signed an affidavit to the effect that five Caucasian officers had been promoted even though they failed a portion of the testing process. What was that exhibit? Was that ever marked as an exhibit in the motion for a new trial? The public records request? No. No, it was not. It was — in fact, Judge Carroll had already ruled on the motion for a new trial at the time that this public records exhibit became available. And the only reason that we pursued it was the director of personnel for Pinal County stepped forward and said, hold on, I remember that five Caucasian officers had taken this test, failed it, but were promoted. Isn't the only — but the dispute as to whether or not they actually, in fact, failed it depends upon whether or not there was always a 70 percent mandatory passing rate. And there was conflicting testimony in that regard between the — Captain Allen Miles is his name and Mike Arnold. And so, therefore, it's a credibility determination. And, again, we don't sit up here to re-decide credibility determinations. Actually, that's an important point, Your Honor, is the conflicting testimony involves Captain Allen Miles, who was in charge of the sheriff's office testing and promotion process. So, therefore, he should have been more credible to the jury if they believed him. I understand that. Right. But there was conflicting testimony from Mike Arnold. And so, therefore, it's a credibility determination. Well, and Mike Arnold has no authority to ruminate on whether or not the sheriff's office can or cannot promote somebody. And hopefully that argument was made in front of the jury. Let's know what the credibility fight was about. Credibility fight was about whether it's always 70 percent as a — as the past measure or whether it was case by case. And there was a clear clash in the evidence on that. The jury came out one way. And if we needed to resolve the credibility, that conflict, Your Honor, then I think we look no further than Sheriff Vanderpool, defendant in this matter, or in the case below, who testified both at his deposition and at trial that 70 percent is the mandatory rate, pass rate, for the assessment process. In fact, he also testified at trial. Well, it depends on how you view what his response was to the question where he gave that answer. So, again, it is a question of interpretation and credibility at that point. And based on his deposition testimony, which was reposed to him at trial, we felt that it was very clear that 70 percent was the mandatory pass rate, which invites the question, then why were five Caucasian officers over the course of the next few years who scored lower than the 70 percent deemed to have passed the test promoted that Mr. Gant was not? Why not make the exception early on at the first time that this assessment center is ever offered in the history of Pinal County? In fact, it was a test that wasn't even properly announced. Mr. Gant received instructions for the first examination we're talking about in May of 2001 that there were two components to that test. There was a written examination and an oral board. He took the written examination, passed it with the second highest score. Then instead of using that oral board, as shown in the announcement for the test, Pinal County came and said, well, we're going to use an assessment process instead. Mr. Gant failed that process, failed the assessment center, and when asked at trial, why did you terminate Mr. Gant or why did you not promote Mr. Gant? He said, Sheriff Vanderpool said, because he did not get the 70 percent score. Captain Miles confirmed that. And so we felt it was very clear that 70 percent was the threshold. Mr. Gant didn't reach it. He was not promoted. But five others through the after-acquired evidence were also shown not to have had the 70 percent, but they were promoted. Is it coincidence that the five who were promoted were Caucasian and Mr. Gant is black? We don't think so. Thank you, Your Honors. Ms. Gilbride. Good morning, Your Honors. Eileen Gilbride for the defendants in this case. I honestly don't have a lot to add to my brief. I'm going to hit the highlights and then see if the Court has any questions. First, the plaintiff is using the wrong standard of review in his brief. From the appeal of a jury verdict, the evidence is viewed in a light most favorable to sustaining the verdict. And from the denial of the new trial motion, the Court uses an abuse of discretion standard of review. The plaintiff is asking for a de novo standard of review, but he never made a Rule 50 motion during trial. He waited until after the verdict to make a Rule 50 motion. You have to make that motion before submitting the case to the jury. And without the Rule 50A motion, the standard of review is extraordinarily deferential to the jury. So that's our first underlying issue in this case. Second, there is no false evidence in this case. The plaintiff is arguing that from some documents that he received in 2008, that he thinks some trial exhibits were false. First, he can't use documents that are not in the record on appeal to make this argument. They are not newly discovered because the evidence existed at the time of trial, and there's no reason he couldn't have gotten those evidence or documents at the time of trial. So we can't even look at these 2008 documents. But even if we do look at them, they don't make his point anyway. As the Court has noted, there was a dispute in the evidence as to what the pass rate was for different tests. The pass rate was 70 percent for Mr. Gant's test. He didn't make that 70 percent for the assessment center. In different tests, Mr. Arnold testified that there were different pass rates, and the jury was entitled to believe that. And so all the documents show are scores for people who took the 2005 test. It doesn't show pass or fail. It doesn't show what the pass threshold was. And so the documents, even if we cared to look at them, don't make his point that white applicants were promoted even if they failed the test later. In fact, his case isn't made because in his test in June of 2001, in the test that he took, two people failed. He failed and a white candidate failed, and neither of them were promoted. So how he can say that is discriminatory is beyond me. There is enough evidence, plenty of evidence, from which the jury could decide that the reason he wasn't promoted was he failed, and not that he was black. The third point that Plaintiff makes is he complains about the admission of evidence at the trial of his termination in 2001. And the reason that he was terminated in 2001. And as Judge Wu has noted, Plaintiff not only made no objection at trial to any of this evidence at any time, not to any of the documents, not to any of the testimony, not to any of the arguments, but he himself brought the issue into the trial. He raised it in his opening statement. He raised it in his pretrial statement. He questioned witnesses as to the fact that he was terminated because he didn't show up for work on Thanksgiving, and yet he put on his timesheet that he worked. And not only did he work, that he should have the pay differential for doing so. And he himself brought up the fact that he failed the polygraph test when he was questioned about that. So any evidence dealing with his termination has been any objection has been waived now, and indeed he brought it up himself. And, in fact, we didn't think that necessarily the reasons for termination were relevant because that had been taken care of in the state court settlement. But Judge Carroll repeatedly ordered that that evidence was relevant to the later events that occurred. And so the evidence was admitted, and Plaintiff never objected. And, finally, the verdict is supported by substantial evidence. There was more than sufficient evidence to show that the reason Mr. Gant was not promoted to lieutenant was that he just was not lieutenant material. Judge Carroll, unfortunately, would not let us admit the videotapes into evidence of his assessment center, but there was admitted into evidence his written work, and that was plenty of evidence from which the jury could find that he simply could not communicate the way a lieutenant needs to communicate, and that is what Sheriff Vanderpool testified to. As for the 2004 sergeant's test, there's, again, more than sufficient evidence to show that the test was just a bad test. It was mistakenly, it was given the wrong test on outdated material. And how Mr. Gant scored 98 percent on an outdated test, the testimony was that he just tests well. But you can't, but everybody else failed absolutely miserably, less than 50 percent or around the 50 percent. And so they knew immediately that there was something wrong. It just didn't test the material that the candidates had been given to study. They had gotten complaints right away from the candidates saying this test didn't test the stuff that you told us to study. And so that afternoon they knew there was something wrong with the test, and the decision made by the human resources director, not by Sheriff Vanderpool, was that we just can't pass one person on a bad test and make everybody else take a good test and then not pass or not pass people on a different test. Everyone has to take the same test, and the people who pass that test can get promoted. So there was plenty of evidence to show that, and he decided not to take the retest. So there's plenty of evidence from which the jury could decide that the reason he was not promoted to sergeant was that he decided not to take the test, the real test that everyone else had to take. And the fact that plaintiff decided not to take the retest because he thought it wasn't fair is just not discriminatory. The bottom line is there is just no error here. There's no error and there's no reversible error. And unless the Court has questions, we'd ask you to affirm the judgment in our favor. I think so. Thank you. Thank you. Mr. Gregory. Your Honors, the defendant's argument in its answering brief, and just now that the records that were discovered through the public records discovery process after trial is not newly acquired evidence, is disturbing. It's as if to say, plaintiffs, you relied on our discovery request, but you shouldn't have. They have an obligation under the rules of civil procedure, Rules 11, 26, 34, to produce evidence.  Now, only discovered it later, after doing this public records request, to say that we should have caught them before trial is putting too much of a burden on any party in the civil litigation in the discovery process. Well, that assumes the fact that, again, that the 70 percent passage rate was always 70 percent and, therefore, what Mr. Arnold said was, in fact, false. But if what Mr. Arnold said was, in fact, true, then the documents are not misleading. They are not incorrect. But taking into account his trial, Mr. Arnold's trial testimony, that he was not involved in or oversaw the testing process. I understand that. But it's, again, ultimately a credibility issue on that point. Right. As for the 2004 examination that Mr. Gant took for promotion to the rank of sergeant, the fact that he got a 98 percent on the original test and the others did not pass the test is not reason for throwing out the test. In fact, the initial response from the sheriff's office was, we inadvertently placed a few incorrect questions on this test. We're going to rescore it and then we'll inform you. They did that, rescored the test. Mr. Gant's score went from 98 percent to 100 percent. He's still the only person to pass the test. It was at that point that the sheriff's office made the decision, we're going to throw out the test, start all over and inform the candidates, you have to retake this test. Mr. Gant refused on the grounds that he'd already passed the test and the rescored test, for that matter, and that he shouldn't have to take a new test simply because he scored so well on the test that was given. There wasn't a basis for the decision to throw out the test and start all over, at least not with respect to Mr. Gant. In fact, Mr. Arnold was asked at trial, why not promote Mr. Gant given his superior performance on the examination? His response was, well, we didn't feel that the test was fair and we wanted to start over, and then invoked this policy called manifest error. In our opinion, Your Honor, the only manifest error that occurred was that Mr. Gant was denied promotion twice. For the foregoing reasons, plaintiffs request that this case at a minimum be remanded, that the jury verdict be vacated and this case be remanded for a new trial on the matter, and that defendants be instructed to strictly comply with the rules of evidence and civil procedure. Thank you. Thank you, counsel, for your argument. The matter just argued will be submitted.
judges: Wu, Goodwin, Rymer